[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married in Meriden, Connecticut, on June 20, 1970. They separated and have lived apart since January of 1991. In January of 1991 the defendant husband left the family home at 22 Lynn Drive, South Meriden, and moved in with his mother. The plaintiff wife commenced this action for dissolution of the marriage by personal service on January 7, 1991.
Two children were born issue of the marriage. When the action was commenced, only one child had not yet reached her majority. At this time this child has reached the age of majority. The plaintiff's complaint claimed alimony, custody of the minor child, support for the minor child, a conveyance of the defendant's interest in the family home, 22 Lynn Drive, South Meriden, Connecticut.
Various motions for custody, support, alimony pendente lite, contempt, etc. were filed and heard between January 28, 1991 and February 5, 1992. On February 5, 1992, the court granted to the parties a judgment of legal separation.
This judgment of legal separation was reopened by order of the court on October 10, 1992. This order was based on a mutual agreement of the parties that only that aspect of the judgment that pertained to financial orders would be reopened. On February 4, 1993, the defendant husband filed a "Petition For Decree Dissolving Marriage After Legal Separation." This petition is the basis for the hearing conducted by the court on April 11, 1994 and subsequent days.
It seems prudent to review the various orders commencing January 28, 1991 and terminating September 9, 1993 to determine precisely how the parties stipulated and agreed to such matters as support, temporary periodic alimony, lump sum alimony and property settlements of realty and personal property since it appears to the court that these decisions will inevitably direct to the court to equitable final orders.
The first order of the court (102), effective February 14, 1991, restrained defendant husband from dispersing or otherwise spending any sums paid to him as a result of a partial CT Page 5972 settlement of his worker's compensation claim against his employer City of Meriden. Defendant had been steadily employed during the marriage as a firefighter for the City full time and part time as a tool and die maker in various industrial establishments. Plaintiff did not work outside the house but occasionally worked as a voter registration checker during federal, state and local elections. During the course of the marriage, plaintiff from time to time provided care for her brother's child at the parties' home, 22 Lynn Drive. Plaintiff received compensation from her brother for these services. In addition to child rearing and housekeeping, the plaintiff managed the couple's finances.
The husband's diligence in working two jobs enabled the parties to accumulate various assets including a single-family dwelling jointly owned which the parties valued at $150,000 with equity of $88,000.
(Plaintiff's financial affidavit May 23, 1991)
(Defendant's financial affidavit May 23, 1991)
The balance from a home equity loan: $ 7,000
An IDS IRA investment 12,000
The husband's 401K plan at AGC 12,000
1981 Grady White Boat 15,000
Two Motor Vehicles
In the latter stages of the marriage, when both children reached the junior high school stage, the husband urged the wife to seek remunerative employment outside the home. The wife did not see fit to change her status as a full-time homemaker which caused friction between the parties and to some extent contributed to the breakdown of the marriage and the departure of the defendant from the family home in January of 1991.
Defendant husband developed hypertension some time prior to 1990 while employed as a firefighter. This condition progressed until March of 1990 when he was hospitalized in Meriden and subsequently the Hartford Hospital for a left cardiac catheterization, coronary angiography, left ventriculography, CT Page 5973 PTCA-RCA. His condition was diagnosed as coronary artery disease, normal left ventricular function, Normal LVEDP, successful PTCA of RCA. The obstruction in the distal right coronary artery was severe but mild in LAD and in the marginal branch of the circumflex. On discharge he was placed on therapy and medication with the recommendation for repeat stress testing. This condition prevented defendant from working from March 1990 through September 1990. The parties vacationed in Florida in the summer of 1990 at which time defendant suffered another episode of pain resulting in a Florida hospitalization and repeat coronary angiography. Presently defendant enjoys the status of a retired firefighter on disability pension. In October of 1990 the City of Meriden and defendant executed a voluntary agreement based on a determination that he had a 17.5% permanent partial disability of his heart. Payments of benefits for this disability terminated in October of 1992. These payments have been utilized as a resource by the parties to fund support and alimony pendente lite payments.
Currently defendant is working full time as a tool and die technician at a local industrial firm where he had worked part time since 1981. He earns approximately $18 hourly. Defendant is currently under the care of a physician for his hypertension-heart problems and is required to take considerable prescriptive medications for his medical conditions. He is forty-five years old, a high school graduate with apprentice training in the tool technology field. His health cannot be categorized as good.
The plaintiff wife is an intelligent, capable woman in good health who graduated from high school and worked a short time before her marriage in 1970 at age 20. After marriage she concentrated on homemaking and child care during the course of her marriage. She did pursue some courses at Middlesex Community College before the marriage broke down. After commencing this divorce action, the plaintiff resumed her education at Middlesex Community College. She received an associate degree in June of 1993 after achieving an overall GPA of 3.591. During the course of these proceedings and at the time of the hearing, plaintiff had not yet secured either full-time or part-time employment. The court finds that she is eminently employable at the present time. Plaintiff currently resides in the former family home with an adult daughter. Title to this home and a motor vehicle was conveyed to her by defendant pursuant to an interim agreement of the parties. CT Page 5974
The defendant moved out of the family home in January 1991 giving the plaintiff no prior warning. Initially he moved in with his mother with whom he lived for approximately five months. In the Spring of 1991 the defendant became romantically involved with another woman, Lou Ann Randall, whom he had known for seven or eight years through his boating activities. This woman was married at the time but was divorced in July of 1991. In November 1991 the defendant and Mrs. Randall established a joint household together.
The thrust of plaintiff's testimony is that defendant left her for Mrs. Randall. Plaintiff's suspicions are not groundless, but they are not confirmed by credible evidence that defendant and Mrs. Randall were romantically involved prior to his leaving the plaintiff. Once during the nearly twenty-year marriage the defendant struck or pushed the plaintiff. Occasionally, the defendant used alcohol excessively.
Plaintiff also complained that defendant was extravagant in his hobbies; i.e., car restoration and boating.
Defendant testified that he became dissatisfied with the marriage because the plaintiff persisted in smoking, refused to engage in outside employment to assist with the family finances, and was somewhat unresponsive in their sexual relationship. None of the reasons expressed by the parties was dominant in the breakup of the marriage. Communication was poor, the parties were immature at the time of their marriage, and with maturity, they gradually widened the distance between them selves. Although the defendant earned a substantial income (Plaintiff's Exhibit T) by working two jobs (1990 1040-item 7 wages, salary, etc. $54,538), the parties extended themselves somewhat when they took out a home equity loan in 1988.
When the husband left the family home, he voluntarily paid the household bills and made $150 available weekly to his wife. On May 23, 1991 the parties stipulated and the court ordered the defendant to pay $549.16 weekly to the plaintiff for child support; the plaintiff agreed to pay the first mortgage, the plaintiff to pay the credit card obligations, the plaintiff to pay interest on the home equity loan and to pay the income tax deficiency from the $7000 balance in the home equity account which was in her possession. Ancillary to these financial orders the defendant agreed to sell his boat and hold the proceeds in CT Page 5975 trust; the plaintiff agreed to use reasonable efforts to get a job.
In January of 1992 the parties again stipulated and the court ordered the defendant to pay to the plaintiff $708 weekly as alimony pendente lite. Plaintiff was now a full-time student; defendant obtained these funds from his worker's compensation award. Defendant agreed in this stipulation to transfer his interest in 22 Lynn Drive to his wife subject to a proviso that the transfer would not prejudice his claim for an interest in the property at the final hearing; the defendant agreed to transfer a 1988 Taurus automobile to the plaintiff wife together with $1200 from the IDS IRA account. Plaintiff's financial affidavit dated January 9, 1992 shows 22 Lynn Drive has a gross equity of $88,000.[1] Defendant's financial affidavit of that date lists the gross equity in this property as $95,000.
On February 5, 1992 the parties appeared in court and submitted a settlement agreement as a predicate for a legal separation. The court accepted this agreement and entered judgment accordingly. This agreement (124) in the court file tracked the court order of January 9, 1992 and expanded it to include other items.
the wife transferred to the husband a 1989 Ford truck;
The husband transferred to the wife a 1988 Ford Taurus automobile.
The wife transferred to the husband all her right, tithe and interest in a 24-foot motorboat.
The husband transferred his interest in 22 Lynn Drive, South Meriden, Connecticut to his wife.
The wife's financial affidavit of February 5, 1992 valued Lynn Drive at $120,000 with gross equity of $54,000. The husband's financial affidavit of February 5, 1992 valued the property at $150,000 with gross equity of $95,000.
The agreement required the husband to pay to the wife as periodic alimony all heart and hypertension benefits and all monthly pension benefits from November 15, 1991 through July 31, 1993. Said periodic alimony to be nonmodifiable as to term. CT Page 5976
Beginning in August 1993 all heart and hypertension benefits and monthly pension benefits payable to the defendant were to be divided equally between the parties.
The wife released any claims to income or benefits due the husband including pension rights from his employer.
The husband agreed to designate the plaintiff irrevocable beneficiary to certain life policies.
The wife released any claim to a potential worker's compensation scarring award available to the husband as well as any Social Security to which the husband may be entitled.
The husband agreed to pay over to the wife sums available after taxes resulting from his liquidation of his (IDS) IRA account together with one half of his AGC, Inc. 401K plan.
On September 17, 1992 (127) plaintiff filed a motion to reopen the judgment of legal separation asserting that the parties based their agreement on facts that proved to be erroneous which naturally affected the oral agreement upon which the court's judgment is based. Both parties through counsel asked the court to open the agreement as to the financial orders. The court granted their request.
In October 1992 plaintiff motioned the court for alimony pendente lite and counsel fees.
This motion came before the court on November 12, 1992 and produced another stipulation and agreement (129). This stipulation was intended to resolve (128) the motion for alimony and attorney's fees and motion (119) dated January 22, 1992, a motion for contempt based on a court order of January 9, 1992 — The court found no contempt and approved (129) the agreement. This agreement provided as follows:
1. The husband to pay over $8,000.00 to the wife from his 401K.
2. The husband to pay alimony to the wife consisting of all sums received by him for pension and hypertension benefits commencing in November 1992. The orders contemplate that the pension-hypertension payments are approximately $400 per month until April 1992, when they will increase to approximately CT Page 5977 $1,900.00 per month. On November 12, 1992 the wife's financial affidavit valued the 22 Lynn Drive property at $100,000 with a mortgage of $76,671.47 and equity of $23,328.53.
On October 29, 1992 the defendant's financial affidavit did not reflect any interest in 22 Lynn Drive inasmuch as he had conveyed his interest into the jointly owned dwelling pursuant to the agreement of January 9, 1992 (115) and/or the separation agreement of February 5, 1992 (124).
The mortgage listed by the plaintiff is memorialized in Exhibit D. The mortgage deed is dated 28 October 1992; plaintiff Maureen Dubuc grants a mortgage lien to Joseph P. D'Astous (her father) to secure payment of a promissory note dated October 28, 1992 in the amount of $76,671.47.
The deed and note were executed after the agreement of January 9, 1992 (115) and the separation agreement of February 5, 1992 (124) but subsequent to October 15, 1992 when the court reopened the separation agreement.
On August 10, 1993 defendant filed a motion for modification of pension and heart and hypertension benefits asking the court to modify the temporary alimony orders based on these benefits which were available to defendant. By stipulation the parties agreed and the court ordered on September 7, 1993 that: (140)
1. Plaintiff will receive full pension benefits for August and September; i.e., $1,944 monthly for August and September, a total of $3,888.
2. Thereafter, the defendant shall pay temporary alimony to the extent of one half of the pension he receives from the City of Meriden.
3. The plaintiff shall immediately look for employment, and income received after October 1, 1993 shall reduce the alimony obligation by 50 cents per dollar received.
4. The agreement is without prejudice to either party seeking to modify the above if trial does not take place in November 1993.
These orders on temporary alimony were apparently CT Page 5978 honored by the parties inasmuch as the final affidavits submitted to the court at the final hearing indicate that defendant was paying $226 weekly, and plaintiff was receiving $226.05 as alimony pendente lite. Plaintiff's Financial Affidavit, 2/18/94, Defendant's Financial Affidavit, April 12, 1994.
The wife's financial affidavit shows expenses of $686.42 against this alimony income of $226.05. It shows approximately $3000 in current liabilities, two thirds to family members and a long-term mortgage obligation to her father of $76,671.67 which is secured by the family home which she values at $100,000. Plaintiff places no value on her 1988 Taurus automobile. The wife's affidavit appears to claim an interest in the husband's boat which he no longer owns. Counsel has also presented a legal bill for services to plaintiff in the amount of $10,084.60.
The husband's financial affidavit shows income from employment after deductions of $480. Income from pension, $452 weekly, with a total net of $962 against expenses including alimony of $226 of $712. His IDS IRA has been liquidated in accordance with the court order and is now $6,000; likewise his plan has been reduced by order of the court and is now $3604. Defendant owns one vehicle with an unencumbered value of $4500. The affidavit shows no evidence of his boat ownership. The evidence enables the court to find it has been sold. The defendant's schedule of liabilities indicates debts of $29,900 including a $15,500 obligation to his mother, $13,500 in legal fees, and miscellaneous obligations of approximately $2000.
Since the defendant departed from the family home in January 1991, the parties have engaged in extensive litigation which has been costly to both parties. During the almost three and one-half years since the litigation commenced, the defendant has worked steadily and provided support and alimony pendente lite to the plaintiff and his minor child.
These support and temporary alimony payments have been considerable; i.e.,
 Support — January 18, 1991 — May 17, 1991 — $2750 plus an undetermined amount of bills paid by defendant
Support — May 31, 1992 — January 10, 1992 — $17,573.12 CT Page 5979
Alimony (1992) — $28,088
Alimony (1993) — $16,946.25
Alimony (1994) — at $226 per week
 Lump sum payment of $8000 from partial liquidation of defendant's 401K account
In addition the plaintiff has had the use of certain funds from the balance in the parties' equity loan plus the benefit of stove and refrigerator charged to defendant's credit card.
The court finds that the parties have not resumed marital relations since the entry of the judgment of legal separation on February 5, 1992 and have not filed a declaration of such resumption in accordance with § 46b-65, therefore, the court enters a decree dissolving the marriage of the parties. Both parties have filed posttrial memoranda, and both have asked for specific relief. Plaintiff asks for the restoration of her maiden name, D'Astous, which the court grants. Plaintiff also seeks extensive periodic alimony and assignment of property, attorney's fees, maintenance of life insurance and exoneration from debts of the defendant.
Defendant asks the court to deny periodic alimony to the plaintiff insofar as it is based on the defendant's heart and hypertension pension and to award to the plaintiff the defendant's interest in the marital home as lump sum and/or periodic alimony. The argument of the defendant is essentially that since defendant worked two jobs during the marriage and contributed almost singly to the acquisitions of the parties' assets, he should be free of any obligation for periodic alimony. Defendant points to the fact that plaintiff did little work outside the marriage during its twenty-year duration and failed to obtain work since the parties separated almost three and one-half years ago despite the absence of child care responsibilities and despite acquiring an associate college degree in June of 1993. He further points out that his heart and hypertension award is personal to him; its purpose is to assure income to an individual who is unable to work because of his disability. Plaintiff argues that defendant is working, has worked, is an excellent wage earner and that the cause of the breakdown of the marriage should weigh heavily against the defendant. Plaintiff alleges that she was abandoned by an unfaithful spouse after more CT Page 5980 than twenty years of faithful service and that she will in all probability never have the opportunity to achieve earning capacity comparable to defendant, despite her education. Earlier in this memorandum the court has discussed the reasons assigned by defendant for the marriage breakup. The court concludes that both parties must share some blame but that the defendant must accept a greater share of the responsibility.
Giving consideration to the general statutes, § 46b-81
and § 46b-82, the court makes the following awards to the plaintiff:
1. Exclusive ownership in the marital home, 22 Lynn Drive, South Meriden, Connecticut, and all personal property therein except
a. Jackstands
b. Rifle
c. Stenographic Machine
d. Pewter Car Collection
e. Saw and Sander
 f. Any other personal items which the plaintiff has reason to believe are rightfully defendant's property.
These items shall be returned to defendant forthwith.
2. Exclusive ownership in the 1988 Ford Taurus automobile presently in her possession.
3. Exclusive right to a claim against one Carl Koishcki for money owed to the defendant. Defendant shall transfer and assign to plaintiff this claim.
4. Exclusive right to certain IDS stock personally signed over to plaintiff by defendant. Defendant will cooperate fully in effecting the reissuance of the certificates by the corporation to the plaintiff.
5. That the defendant maintain at his sole cost with CT Page 5981 the plaintiff as the irrevocable beneficiary so long as she remains unmarried any and all life insurance policies now in existence and provided through the City of Meriden in the approximate amount of $4000 and through his current employer. The defendant shall verify to the plaintiff on an annual basis that said policies are in effect and that she is still the irrevocable beneficiary on the policy.
6. That the defendant pay over to the plaintiff one-half of any and all proceeds derived from the surrendering of any and all life insurance policies during the pendency of this action and during the parties' legal separation.
7. That the defendant be ordered to maintain at his expense the First Colony Life Term Life Insurance policy in the face amount of $75,000 naming the plaintiff as the irrevocable beneficiary until December 31, 1996, at which time the plaintiff shall have the option to have said policy transferred to her for her to pay as she deems advisable; otherwise, the defendant may do with the policy what he deems advisable. The plaintiff shall exercise said option by letter at least 45 days prior to December 31, 1996.
8. An order requiring the defendant to provide medical insurance at his cost as the same is available through his previous employer, the City of Meriden, and/or his current place of employment for the benefit of the plaintiff for so long as the plaintiff remains unmarried or until such time as the plaintiff has medical insurance available to her through her place of employment but in no event later than June 30, 1995.
9. An order that a Qualified Domestic Relations Order, acceptable to the City of Meriden, be prepared such that fifty percent (50%) of the defendant's heart and hypertension/pension benefits payable to him be paid over to the plaintiff.
Said sum shall be in nonmodifiable in amount or duration, and it shall be payable until such time as the plaintiff dies or remarries. The plaintiff shall be entitled to any City of Meriden worker's compensation, heart and hypertension benefits that may be due the widow of the defendant in the event defendant should predecease the plaintiff and as the same is allowed by applicable federal and state statutes or ordinances or laws of the City of Meriden. CT Page 5982
This benefit is considered by the court to be a property settlement in the nature of support and shall not therefore be dischargeable by the defendant in bankruptcy or otherwise. Each party shall be responsible for the state and federal income taxes on their respective share of the benefits so paid.
The plaintiff shall retain all rights she has to the defendant's Social Security benefits in the event of his death as she would have if she were his widow and as the same is allowed by applicable federal and state statutes.
The plaintiff will prepare a Qualified Domestic Relations Order acceptable to the City of Meriden so that the benefits described in section 9 due defendant shall be paid to plaintiff.
11. Each party shall be responsible for their individual debts as shown on their most recent financial affidavit.
12. The court awards the plaintiff the sum of $4000 in payment for her attorney's fees. This sum shall be payable at the rate of $100 per month commencing August 1, 1994 and monthly thereafter.
Plaintiff will prepare a judgment file.
Dorsey, J. State Trial Referee